606 A.2d 960

**Paul J. STAHL, Jr., George W. Stahl, Kenneth Greenwood and New Road Associates, Appellants,**

v.

**UPPER SOUTHAMPTON TOWNSHIP ZONING HEARING BOARD, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Nov. 22, 1991.

Decided April 1, 1992.

Reargument Denied May 15, 1992.

John A. Van Luvanee, for appellants.
Daniel J. Lawler, for appellee.

Before CRAIG, President Judge, and McGINLEY, J., and LORD, Senior Judge.

CRAIG, President Judge.

Paul J. Stahl, Jr., George W. Stahl, Kenneth Greenwood and New Road Associates (Associates) appeal an order of the Court of Common Pleas of Bucks County that affirmed a decision of the Zoning Hearing Board of Upper Southampton Township denying the Associates' petition for a curative amendment. We reverse.

The Associates filed a challenge to the substantive validity of the township's zoning ordinance and map, under section 1004 of the Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, 53 P.S. § 11004. Specifically, the Associates challenged the ordinance provisions relating to mobilehome parks, asserting that the ordinance and map effect a de facto exclusion of mobilehome parks. The Associates seek to develop a tract of land they own in an R-2 district into a mobilehome park.

The zoning hearing board held hearings and rendered a report rejecting the Associates' challenge and upholding the validity of the ordinance. The Associates appealed the board's decision to the common pleas court, which took no additional evidence and affirmed the board's decision.

The board's relevant findings of fact are as follows. Section 406 of the township ordinance permits mobilehome parks only in R-4 Residential Districts. That provision also requires that each lot in a mobile home park must have a minimum size of 9,000 square feet, a minimum front yard of 30 feet, a minimum rear yard of 35 feet, and minimum width of seventy feet. Furthermore, the density requirement applicable to single-family detached dwelling units also applies to mobilehome parks. In R-4 districts, such units are subject to a maximum density of three units per acre.

The property the Associates seek to develop consists of three parcels of land. The property is located in an R-2 zone, which permits single-family detached dwelling units,

conversion of existing detached dwelling units into apartments as a conditional use, and cluster development of detached single family homes as a conditional use. The ordinance also permits certain agricultural uses in R–2 zones.

The board determined that, when the ordinance was adopted, there were two tracts of land that could have been developed into mobilehome parks. Although one of those tracts, located in the southern part of the township, was being developed into a townhouse development at the time the ordinance was adopted, the board found that the property could have been developed as a mobilehome park. The other tract is undeveloped, and consists of two contiguous parcels that together total more than fifteen acres. The parcels are divided by Willow Penn Drive; however, both the board and the trial court concluded that the land could be developed as a mobilehome park.

The board concluded that neither the ordinance's 9,000 square feet minimum lot requirement nor its maximum density requirement rendered the ordinance de facto exclusionary as to mobilehome parks. The board noted that an economic loss is insufficient to make an ordinance unconstitutional, and that the Associates had not established that a three-unit per acre density provision makes development economically unfeasible. The board also concluded that the front and rear yard requirements do not make the ordinance unduly restrictive or exclusionary.

On appeal to the court of common pleas, the trial court determined that the Associates did not offer any evidence regarding the amount of land available for development in the township. Thus, the trial court concluded that there was no way to determine whether the township had provided for a fair share of its land for the development of mobilehome parks, in accordance with the Supreme Court's decision in *Surrick v. Zoning Hearing Board of Upper Providence Township*, 476 Pa. 182, 382 A.2d 105 (1977).

The court agreed with the board that economic loss is insufficient to render an ordinance exclusionary, and noted

that the board, as fact finder, elected to reject the testimony of the Associates' expert regarding the economic feasibility of developing a mobilehome park in accordance with the ordinance requirements.

Finally, the trial court addressed the Associates' argument that the ordinance is exclusionary because it provides only for mobilehome parks having the entire park under single ownership. The court concluded that there is no inconsistency between the MPC's definition of mobilehome park and the single ownership component of the ordinance's definition of mobilehome park, and that the definition did not render the ordinance exclusionary.

In this appeal the Associates raise the following issues: (1) whether the township's ordinance effects a de facto and unconstitutional exclusion of mobilehome parks; (2) whether the zoning hearing board erred in concluding that the dimensional aspects of the mobilehome park ordinance makes the development of mobilehome parks infeasible and therefore renders the ordinance de facto exclusionary; and (3) whether the ordinance is de facto exclusionary because it does not permit mobilehome parks in which lots are sold in fee simple or under a condominium regime.

### 1. Does the township provide a fair share of its land for mobilehome parks?

When a party alleges that a municipality has enacted a zoning ordinance that effects a partial or de facto exclusion, the Supreme Court's analysis in *Surrick* applies.

*Surrick* established a three-prong test for determining whether a municipality has provided its fair share of land for a particular use. The first part of that test requires an inquiry as to whether the community in question is a logical area for development and population growth. If the community is in the "path of growth," i.e. has a potential for growth, the present level of development within the community must be examined. If the community is (1) within the path of growth and (2) not already highly developed, the third step is to ascertain whether the zoning ordinance has

the practical effect of unlawfully excluding the proposed use.

Initially, the Associates argue that the land the township set aside as R–4 districts for the potential development of mobilehome parks was either already in the process of development for another purpose or not capable of development as a mobilehome park, and thus, that the ordinance's supposed purpose of allocating land for the potential development of mobilehome parks is illusory.

In *Appeal of Groff,* 1 Pa.Commonwealth Ct. 439, 274 A.2d 574 (1971), this court noted that where a municipality's zoning ordinance allocates sufficient land for a use, but the area ultimately becomes saturated by other uses, the inability to develop land does not amount to an unconstitutional prohibition of the use.

■ However, contrary to the board's and trial court's conclusion, that is not the case here. In fact, the Trowbridge area was in the process of development for another residential use at the time the township considered and ultimately adopted the ordinance. Furthermore, the Medoff tract was zoned R–2 until 1981 when the developer of that tract sought a zoning change to R–4 that would allow him to develop the property. Those tracts cannot be considered in analyzing the question of whether the township's ordinance provide for a fair share of land for mobilehome parks when it was adopted.

Under *Surrick,* this court ordinarily would look to the remaining tract located in the northern part of the township on Street Road, divided by Willow Penn Road, to determine whether that allocation constitutes a fair share.

However, the Associates did not specifically raise *Surrick*'s fair share requirement in their curative amendment petition. Furthermore, as the trial court noted, although the record does contain statistical information regarding the potential for growth in the township, *Surrick*'s first prong, there is no evidence in the record regarding the percentage of land in the township that remains undeveloped. That

type of evidence is necessary for either a board or a trial court to make a determination as to whether the township has undeveloped land available, the second prong of *Surrick*. Thus, the trial court correctly concluded that the Associates did not meet their burden with regard to their challenge that, under *Surrick*, the township does not provide a fair share of land for mobilehome parks.

## 2. Single ownership requirement

■ The Associates assert that the ordinance is exclusionary because it defines mobilehome parks as being in single ownership, thus prohibiting the use. The Associates argue that the definition is inconsistent with the MPC's definition of the term, section 107, 53 P.S. § 10107, and exclusionary because it limits the type of ownership under which a mobilehome park may be developed and operated.

Although the MPC's present definition does not refer to mobilehome parks as being in single ownership, the MPC's definition of mobilehome park at the time the township adopted the ordinance did include a reference to single ownership. Hence, the definition was not inconsistent with the MPC's former definition, which was effective when the township adopted its ordinance.

Moreover, this court agrees with the trial court that the provisions are not inconsistent. Nor does the definition render the ordinance unconstitutionally invalid.

The township has a justifiable reason to limit the ownership of mobilehome parks. Subdivision provisions are designed to regulate the division of large tracts of land. Those provisions generally prohibit chopping land into small pieces, for various legitimate reasons. If this court were to agree with the Associates, the township's subdivision regulations might be threatened. The township's ordinance and subdivision regulations could possibly permit a mobilehome subdivision, but not one consisting of the small lot sizes that the Associates seek to develop.

Moreover, the Local Government Commission, which played a significant role in drafting the revisions to the MPC, has indicated in its analysis of the revisions that

This definition has been amended to clarify that a mobile-home park may be either a single parcel of land or contiguous parcels which have been designated as a mobilehome park, and is, by improvement, intended for use as two or more mobilehome lots.

Thus, the legislative intent behind the amendment of the MPC's definition of mobilehome park is not related to the single ownership component of the former definition. This court concludes that the single ownership requirement does not render the ordinance unconstitutional.

### 3. Is the ordinance unconstitutional because its dimensional requirements are unreasonable and therefore exclusionary or unduly burdensome?

■ The second claim of the Associates is that the ordinance is invalid because the dimensional requirements render development of the land unfeasible.

In *Christ United Methodist Church v. Municipality of Bethel Park,* 58 Pa.Commonwealth Ct. 610, 617–8, 428 A.2d 745, 748, (1981), this court noted that a zoning ordinance "may be unconstitutional if it is exclusionary *or* unduly restrictive." (Emphasis added.) The court stated that "[a]n ordinance is unduly restrictive if 'the severity of its restrictive impact on the owner of the regulated property is unjustified for police power purposes....' *Martin v. Township of Millcreek,* 50 Pa.Commonwealth Ct. 249, 252, 413 A.2d 764, 765 (1980)."

The court in that case also stated that "minimum lot sizes may be so large as to be exclusionary in effect" and that "the constitutionality of a minimum lot size must be determined on a case-by-case basis." 58 Pa.Commonwealth Ct. at 616, 428 A.2d at 747.

The court in that case concluded that the ordinance at issue was exclusionary in effect, because the minimum lot

size was larger than necessary for the proposed use and because there was no valid extraordinary justification for the requirement. The court also found the ordinance unduly restrictive as applied to the appellees in the case:

> In the absence of a demonstrated relationship to the public health, safety or welfare we must conclude that in the instant case the five acre minimum lot size is unjustified as an exercise of the police power.

58 Pa.Commonwealth Ct. at 618, 428 A.2d at 748.

In *Martin v. Township of Millcreek,* 50 Pa.Commonwealth Ct. 249, 252-3, 413 A.2d 764 (1980), this court stated:

> Thus under the overarching substantive due process concept—the principle that there is an unconstitutional deprivation of property if regulatory impact is not reasonably related to legitimate public interest—zoning requirements can, alternatively, be invalid because exclusionary or because unduly restrictive; that is, a zoning limitation may be improper because its effect is to exclude people (such as low and moderate income groups) entirely from the municipality, or because the severity of its restrictive impact on the owner of the regulated property is unjustified for police power purposes—or both infirmities may be present.
>
> Zoning prohibitions of multi-family, dwellings have figured more prominently when the specific issue is exclusion ... Minimum lot area requirements have been scrutinized more prominently with respect to being unduly restrictive.

> .    .    .    .    .

> However, just as a multi-family dwelling prohibition can also be confiscatory as applied to a particular location, minimum lot area requirements have also been related to the problem of exclusion. In *Bilbar [Construction Co. v. Easttown Township Board of Adjustment,* 393 Pa. 62, 141 A.2d 851 (1958) ] ... although the Supreme Court's concern was focused primarily upon the restrictive impact of a one-acre minimum (which was upheld) Chief Justice Jones added a dictum:

And, of course, minimum lot areas may not be ordained so large as to be exclusionary in effect and, thereby, serve a private rather than public interest.

In invalidating a four-acre minimum in *National Land*, while finding that the "deprivation of value" outweighed the public benefit, the Supreme Court also referred to "the interesting issue" of a municipality's responsibility to other people and condemned any "zoning ordinance whose primary purpose is to prevent the entrance of newcomers." ... In *Concord, supra*, two and three-acre lot area minimums were condemned as being unreasonably restrictive and also as exclusionary.

In this case, the Associates argue that the ordinance is either exclusionary in effect or unduly restrictive. The township, in support of its position relies on this court's decision in *Colonial Park v. New Britain Borough Zoning Hearing Board*, 5 Pa.Commonwealth Ct. 594, 290 A.2d 719 (1972).

In *Colonial Park*, however, Judge Rogers premised his opinion, that a 20,000 square foot lot requirement in an "R" district was presumptively valid, on the basis that there was "no evidence in the record that a mobile home park conforming to the "R" district requirements could not feasibly be created and conducted on appellant's property." 5 Pa.Commonwealth Ct. at 603, 290 A.2d at 724. Thus, he implicitly based the decision on the conclusion that the requirements were not unduly restrictive.

However, this court recognizes that satisfaction of the Supreme Court's fair share requirement outlined in *Surrick* would be meaningless without reasonable zoning provisions that allow development of a particular use such as mobile-home parks. Theoretically, a municipality could comply with its fair share responsibility and nevertheless indirectly preclude development of a type of housing by adopting restrictive dimensional requirements.

Just as the court in *Concord Township Appeal*, 439 Pa. 466, 268 A.2d 765 (1970), recognized that three-acre lot requirements for single-family development were unconsti-

tutional, because such a requirement effectively kept out newcomers and served a private and exclusionary purpose rather than a public purpose, and because a three-acre lot requirement is unnecessary for single-family dwellings, this court must examine the necessity for the dimensional requirements for mobilehome parks.

This court, in considering whether the ordinance is unduly restrictive must look at the use involved and determine whether the restrictions are unreasonably burdensome with regard to the specific use, mobilehome parks in this case.

In *National Land and Investment Co. v. Easttown Township Board of Adjustment,* 419 Pa. 504, 215 A.2d 597 (1965), the Pennsylvania Supreme Court reviewed a minimum lot size requirement of three acres for single-family dwellings and compared that requirement to buildings placed on the same size lot in major cities. For example, the court noted that the Lit Brothers building in Philadelphia was placed on a area of approximately three acres. With regard to the present zoning ordinance, other uses are permitted in lot sizes smaller than the 9,000 square feet lots required for mobilehome lots in mobilehome parks.

For example, in R–4 districts, twin dwellings and multi-family detached dwellings have minimum lot area requirements of 5,000 square feet. Townhouses have minimum lot area requirements of 2,000 square feet.

When the area requirement for townhouses is contrasted with the 9,000 square feet requirement for each mobilehome site, and the R–4 maximum density of four per acre for townhouses is matched against the three-per-acre maximum for mobilehomes, the illusory nature of the mobilehome park provisions becomes apparent.

In effect, this township is requiring each mobilehome to be sited only as if it were a single-family dwelling. In itself, that provision is not blameworthy. The physical result would be development similar to a three-per-acre subdivision of conventional single-family dwellings. Of course, such development would be quite unusual because

the single-ownership requirement bars actual subdivision of lots by title; holding all the lots under single-ownership means that the development would have to involve individual lot occupancy based upon rental or possibly cooperative ownership arrangements.

By not providing for a mobilehome park use of higher density and banning it from the R-4 multiple-unit district, this township has indeed excluded entirely the mobilehome park concept which amounts to a horizontal kind of multiple-dwelling—the common arrangement in which small mobilehome sites, held under a single ownership of the park, are rented to tenants so that the density is equivalent to that of apartments or multiple-family dwellings.

Hence, in this municipality, there is no provision for the low-cost housing alternative of a true mobilehome park because the three-units-per-acre "mobilehome park" is illusory.

The evidence here does support the Associates' argument that development of a mobilehome park in accordance with these ordinance requirements is economically infeasible.

The Associates offered the testimony of Robert Childs, who indicated that development of the property in strict conformance with the ordinance would cost between $25,000 and $30,000 per lot.

The Associates quote Mr. Childs in its brief, as follows: Q. Mr. Childs, [assuming] your cost project[ions] of between $25,000 and $30,000 for the construction of sidewalks, utilities in a mobile home park built according to Upper Southampton Township standards, assuming $4,000 per lot per pad costs for the improvement of the lot itself, further assuming that forty percent of the income received by the park owner is consumed by operational expenses; further assuming the average monthly rental received for a pad is presently $275 per month; assuming even further that the owner of the land throws the land in for zero dollars, do you have an opinion as to whether a mobile home park designed in accordance with

the Upper Southampton Township Zoning Ordinance could be developed?

A. Yes, I have an opinion.

. . . . .

Q. What is your opinion?

A. My opinion would be that this project with only fifty lots at those measurements is so costly it would not be economically feasible.

Q. Let's not worry about any particular site. Let's not worry about any particular lot. I am talking about individual lot costs.

A. Well, if I were to testify would it be feasible to develop a mobile home park under those criteria with those costs such as we have talked about, my answer is no.

Q. Would you tell us what factors led you to that conclusion?

A. Well, the income ratio versus the expense ratio, the total cost of the project going on.

Q. Can you tell us what you mean by ratio, income ratio to expense ratio?

A. Well, your income would be too low to your costs of your rentals. Or I can change that and say that rentals would have to be too high to make it feasible to rent the lots because of competition in the neighborhood or in the area. So, your income would have to be so high to make it feasible that it wouldn't be profitable to build it.

The board made the following finding with regard to Mr. Child's testimony:

15. The applicants presented the testimony of an expert who opined that a profit could be made if the entire 23 tracts were developed with 65 units as opposed to 34 units (34 units would be permitted by the ordinance). His opinion was based upon a number of assumptions. The expert offered certain bare conclusions that even a 50 lot park was not economically feasible; but presented no figures such as income, expenses, amortization of im-

provement costs and return on investment to support his conclusions. The expert presented no figures which would indicate that if the mobile home park were developed at 3 units per acre it would not be feasible. The evidence presented was insufficient to reach a conclusion that the tract could not be developed profitably using 3 units per acre.

However, as the Associates point out in their brief, Mr. Stahl testified as to the specific costs of development, both in accordance with the ordinance and under the less restrictive dimensional requirements the Associates proposed in their petition for a curative amendment.

Thus, the Associates are correct in arguing that this court's decision in *Poli v. Board of Supervisors of Northampton Township*, 83 Pa. Commonwealth Ct. 620, 478 A.2d 927 (1984), upon which the board and trial court relied, is distinguishable from this case.

■ The board and trial court erred in equating economic loss with economic infeasibility. Economic loss refers to the inability to glean optimal financial gain. The phrase "economically unfeasible" relates to the effect an ordinance has on any developer who, because of an ordinance's restrictions, is barred from development because of economic infeasibility.

The board and the trial court quoted *Tidewater Oil Co. v. Poore*, 395 Pa. 89, 149 A.2d 636 (1959) for the proposition that economic loss is insufficient to render an ordinance unconstitutional. However, the court in that case indicated that

[A]n ordinance is not to be declared legally unsustainable merely because it may deprive the owner of the opportunity to devote his land to its most lucrative and profitable use ... *So long as the property in question may be reasonably used for purposes required by the Zoning Ordinance*, the owner may not legally complain. (395 Pa. at 97, 149 A.2d at 640, citations omitted)

■ The emphasized text indicates that, although economic concerns, i.e., the degree of profit from a use, are not governing with regard to constitutional challenges, if an ordinance, through its particular requirements, makes the development of a use permitted by the ordinance economically impossible, the ordinance is unconstitutional, because the municipality has essentially precluded a legitimate use by an indirect means.

In this court's opinion, the board's finding of fact No. 15, that the Associates did not present sufficient evidence to establish that development of the land in accordance with the density and dimensional requirements of the ordinance would not be profitable, is not supported by the evidence.

### Conclusion

Accordingly, the decision of the trial court is reversed, based on this court's conclusion that the dimensional and density requirements of the township's mobilehome park ordinance make the ordinance unduly restrictive.

Under section 1006–A(c) of the MPC, 53 P.S. § 11006–A(c),

If the court finds that an ordinance or map, or a decision or order thereunder, which has been brought up for review unlawfully prevents or restricts a development or use which has been described by the landowner through plans and other materials submitted to the governing body, agency or officer of the municipality whose action or failure to act is in question on the appeal, it may order the described development or use approved as to all elements or it may order it approved as to some elements and refer other elements to the governing body, agency or officer having jurisdiction thereof for further proceedings, including the adoption of alternative restrictions, in accordance with the court's opinion and order.

The Associates ask this court to approve its alternative plan, Exhibit A–71, subject to compliance with other applicable provisions of the Upper Southampton Zoning Ordinance and Subdivision Ordinance. That plan incorporates the

following dimensional characteristics, as requested by the Associates:

1. Minimum lot size of 4,500 square feet;

2. Minimum lot width at building set back line of 45 feet;

3. Minimum front yard of 20 feet;

4. Minimum rear yard of 20 feet; and,

5. Maximum gross density of four dwelling units per acre.

Those dimensional aspects are reasonable, and this court approves the request. As indicated, the Associates must comply with other applicable provisions of the zoning and subdivision ordinances.

## ORDER

Now, April 1, 1992, the decision of the Court of Common Pleas of Bucks County, dated January 14, 1991, at NO. 90–001719-05-5, is reversed and the appellants' request for relief is granted with respect to the dimensional aspects of its proposed mobilehome park development:

1. Minimum lot size of 4,500 square feet;

2. Minimum lot width at building setback line of 45 feet;

3. Minimum front yard of 20 feet;

4. Minimum rear yard of 20 feet; and,

5. Maximum gross density of four dwelling units per acre.

As indicated in the accompanying opinion, the developer shall comply with all other applicable provisions of the township's zoning and subdivision ordinances.