### MONTGOMERY CROSSING ASSOCIATES, a Pennsylvania General Partnership

v.

### TOWNSHIP OF LOWER GWYNEDD, Appellant.

Commonwealth Court of Pennsylvania.

Argued Oct. 4, 1999.
Decided Aug. 28, 2000.

James J. Garrity, Blue Bell, for appellant.

Gilbert P. High, Jr., Norristown, for appellee.

Before PELLEGRINI, Judge, LEADBETTER, Judge and NARICK, Senior Judge.

LEADBETTER, Judge.

The Township of Lower Gwynedd (Township) appeals the order of the Montgomery County Court of Common Pleas requiring the Township's Board of Supervisors to enact a curative amendment to its Zoning Ordinance to permit several uses which the court found to be unconstitutionally excluded. Because the common pleas court exceeded its proper scope of review by reweighing the evidence, we reverse.

Montgomery Crossing is a professional land developer owning approximately 67.8 acres at the intersection of State Routes 309 and 63, and located entirely in Lower Gwynedd's "A–1 Residential District," which allows primarily single-family detached dwellings. On August, 10, 1993, Montgomery Crossing Associates filed a curative amendment challenge pursuant to section 609.1(a) of the Pennsylvania Municipalities Planning Code [1] before the Board of Supervisors of Lower Gwynedd Township. In their curative amendment application, Montgomery Crossing proposed that the Township remedy a *de jure* and *de facto* exclusion of both mobile homes and various large commercial establishments.

---

1. Act of July 31, 1968, P.L. 805, *as amended,* 77 P.S. §§ 10101–11202.

Appellee attempts to cure these alleged exclusions by requesting in the amendment that the tract of land at issue be rezoned partially as a "D–2 Planned Business District" (permitting business uses)[2] and partially as an "E Residential District" (permitting mobile homes). *See* Amended Petition for Curative Amendment, Exhibit T–1–A, R.R. 1073a.–1074a.

Following fifty-seven separate hearings, the Board of Supervisors, in a 108–page decision, rejected Montgomery Crossing's proposed curative amendment, finding that no commercial or residential uses were excluded by the Township. On appeal, however, the common pleas court reversed, finding *de jure* and *de facto* exclusions of several specific commercial uses, and the complete exclusion of mobile home parks. The Township appealed.

■ A party challenging a zoning ordinance has a heavy burden. "[A] presumption of validity attaches to a zoning ordinance which imposes the burden to prove its invalidity upon the one who challenges it." *National Land and Investment Co. v. Kohn*, 419 Pa. 504, 522, 215 A.2d 597, 607 (1965). Because the trial court took no additional evidence, its review was limited to determining whether the Board of Supervisors committed an error of law or abused its discretion by finding facts not supported by the record. *Id.*

I. Commercial Uses

Montgomery Crossing's proposed curative amendment adds a preamble to its proposed new D–2 zoning district entitled "1284.02 Purpose." This section reads: "The purpose of the D–2 Planned Business District shall be to provide a series of non-residential uses to serve the community at key transportation corridors in the township. These uses would include shopping centers."

**2.** This D–2 District would be amended slightly to specifically allow shopping centers as a

■ We have long held that "a shopping center constitutes simply a particular configuration of commercial uses, rather than a separate land use category in itself." *Sultanik v. Board of Supervisors of Worcester Township*, 88 Pa.Cmwlth. 214, 488 A.2d 1197, 1205 (1985). *See also East Marlborough Township v. Jensen*, 139 Pa. Cmwlth. 297, 590 A.2d 1321 (1991). Therefore, although Montgomery Crossing seeks to erect a shopping center, its specific challenge is not that there is a ban on shopping centers, but rather on certain types of commercial uses that might conceivably occupy a shopping center. The Board found that all such uses were in fact permitted. *In re Application of Montgomery Crossing Associates*, Board of Supervisors of Lower Gwynedd Township, slip op., Finding of Fact 56. Specifically, in the D Business district the Lower Gwynedd ordinance permits a variety of commercial uses, as follows:

A building may be erected or used, and a lot may be used or occupied, for any of the following purposes and no other:

(a) A retail store selling or leasing for local or neighborhood use one or more of the following items at retail: food, groceries, meats, vegetables, fruit, drugs, cosmetics, hardware, clothing, jewelry, watches, optical goods, nursery stock or musical, professional or scientific instruments;

(b) An office, bank or financial institution;

(c) A personal service shop of a dressmaker, shoe repairer, tailor or hairdresser;

(d) Medical offices of a private practitioner, other than a clinic;

(e) An undertaker, but not including a crematorium;

(f) A baker, confectioner or custom shop for the production of articles to be sold only on the premises;

permitted use.

(g) A restaurant and a catering establishment, when authorized as a special exception by the Zoning Hearing Board;

(h) A municipal use; and

*(i) Any use similar to those specified in subsections (a) to (h) hereof, when authorized as a special exception by the Zoning Hearing Board.*

Lower Gwynedd Zoning Ordinance, § 1284.02 (emphasis added). The Board specifically interpreted subsection (i) to include all of the challenged uses. *See* Finding of Fact 57. The Board's interpretation of this provision is entitled to substantial deference. *See, e.g., Borough of Milton v. Densberger,* 719 A.2d 829, 831 (Pa.Cmwlth. 1998).

■ The common pleas court, however, ignored the Board's interpretation of this subsection and found that "Districts D, D–2, D–3, and D–4 do not permit appliance stores, electronics stores, home furnishing sales, department store, indoor recreation centers, movie theaters, lumber/building supply stores, or sporting goods stores." *Montgomery Crossing Associates v. Township of Lower Gwynedd,* No. 97–15922, slip. op. at 3. The common pleas court improperly substituted its judgment for that of the Board. Aside from the deference due the Board in this regard, the Board's interpretation was not erroneous as a matter of law. In determining whether an ordinance creates a *de jure* exclusion, "[u]ncertainties in the interpretation of an ordinance are to be resolved in favor of a construction which renders the ordinance constitutional." *Upper Salford Township v. Collins,* 542 Pa. 608, 610, 669 A.2d 335, 336 (1995) (citations omitted). The Board of Supervisors thus properly construed the ordinance to permit the allegedly excluded uses.

The common pleas court next found that even "if through some strained interpretation of the zoning ordinance would these land uses be considered permitted, the Court still found that the practical effect of the zoning ordinance is to exclude" movie theaters, department stores, indoor recreation facilities, nursery stock/garden centers, and lumber/building supply stores. *Montgomery Crossing Associates,* slip. op. at 4. The court based this finding of a *de facto* exclusion on the fact that stores in the D business district are limited to no more than 6,500 square feet of floor space.[3]

In a case such as this one where the court of common pleas did not take additional evidence, its standard of review is identical to that of this court:

> If the record below includes findings of fact made by the governing body, board or agency whose decision or action is brought up for review and the court does not take additional evidence or appoint a referee to take additional evidence, the findings of the governing body, board or agency shall not be disturbed by the court if supported by substantial evidence.

53 P.S. § 11005–A.[4] Thus, the correct approach for the trial court is not to reweigh the evidence presented, but rather to examine the Board's findings, and determine whether there was substantial evidence to support them. The Board found in this case that despite the size restrictions in the D business district, the uses were not subject to a *de facto* exclusion, but rather were permitted in the D business district. *In re Application of Montgomery Crossing Associates,* Board of Supervisors of Lower Gwynedd Township, slip op., Finding of Fact 56, N.T., 11/4/96, 26–27.[5]

---

**3.** District D–2 is the only commercial district in the Township without a floor space limitation, and permitted uses there are more limited than in the D business district.

**4.** Act of July 31, 1968, P.L. 805, *as amended,* added by Section 101 of the Act of December 21, 1988, P.L. 1329.

**5.** The Board also found that over the years "the great majority of [variance] requests [from these size limitations] have been granted." (Finding of Fact 150, noting specific examples).

Montgomery Crossing relies upon testimony by Mr. van Rieker—one of appellee's land planners—as evidence that the specified enumerated uses [6] cannot be constructed in less than 6500 square feet. *See* Exhibit A–81, R.R. 982a. However, this evidence speaks not about the alleged excluded uses, but rather about the marketing protocols of certain specific "big box" retailers. While Mr. van Rieker may be correct that Home Depot, for example, may not find it profitable to open a hardware store in less than 50,000 square feet, there was no evidence presented that a small hardware store could not have been constructed within the space limitation. Consequently, the record supports the Board's finding that the enumerated uses were not *de facto* excluded.

Moreover, while a township must in its zoning scheme provide for all reasonable uses, it is not required to zone for every business model; if a smaller version of a commercial use may be constructed in the D business district, townships need not zone specifically to allow larger versions to avoid the conclusion that their ordinance is exclusionary. This holding is consistent with the long established rule applicable to residential uses that if an ordinance provides for a particular use, such as apartments, it will not be held exclusionary because it limits that use to a particular size building. *See Board of Supervisors of Northampton Township v. Gentsch*, 51 Pa. Cmwlth. 455, 414 A.2d 1102, 1105 (1980). Since the record supports the Board's findings and it did not err as a matter of law, common pleas was obligated to affirm on this claim.

Montgomery Crossing further argues that Lower Gwynedd has not provided its "fair share" of land for commercial development, noting that only 2.1% of the Township is zoned for commercial use. However, we have held that in a commercial fair share challenge, "it is not sufficient, absent a showing of total prohibition, for a developer to merely point out that a relatively small area of the municipality is zoned for commercial use without any proof that the needs of the community's residents are not being adequately served." *Sullivan v. Board of Supervisors of Lower Makefield Township*, 22 Pa. Cmwlth. 318, 348 A.2d 464, 467 (1975). The Board of Supervisors observed that there are four shopping centers either built or planned in Lower Gwynedd, and that commercial use constitutes 359,761 square feet of the Township. It further observed that The English Village Shoppes, a shopping center only one quarter of a mile north on Route 309 (albeit in a different township), has one of the lowest occupancy rates in the region. *In re Application of Montgomery Crossing Associates*, at Findings of Fact 63, 66, 82, 83. From these facts, as well as extensive data on the numerous malls outside the Township but within several miles, the Board concluded that the Township's shopping needs are being "more than adequately served." *Id.*, Finding of Fact 91. This finding is substantially supported by the record, so will be upheld.

II. Mobile Homes

Montgomery Crossing also claims that the Lower Gwynedd Township Zoning Ordinance is invalid in that it excludes mobile homes. Mobile homes, however, are an expressly permitted use in the "E" Residential District.[7] The Board of Supervisors found:

---

6. We note that we do not here determine that a department store is necessarily a specific use which must be provided for in a zoning plan. We are not convinced by the lower court's reasoning that "[a] department store is not merely a configuration of commercial uses, as is a shopping center, but rather it is a combination of many commercial uses within the confines of a single building." *Montgomery Crossing Associates*, No. 97–15922, slip op.

at 4, fn. 6 (citation omitted). This is a distinction without a difference. A mall type shopping center is also a combination of many commercial uses within the confines of a single building.

7. The Township also argues that mobile home parks are permitted in MF–3 and MF–3A Districts. While this is true, these districts are limited to "elderly housing," including nurs-

There is approximately 45 acres in Lower Gwynedd Township zoned specifically for a mobile home park or development as part of the "E" Residential District. At the time those 45 acres were zoned for mobile homes or a mobile home park, the land was vacant.[8] The owner/developer of the tract, however, chose to build another permitted use in the "E" Residential District, apartments, rather than mobile homes.

*In re Application of Montgomery Crossing Associates,* at Findings of Fact 107. This finding is adequately supported in the record. *See, e.g.,* N.T. 2/7/1994, 16–17. The court of common pleas nonetheless concluded that mobile homes were excluded, noting:

> The "E" Residential District before the development proposal allowed mobile homes at a density of 4 units per acre, while it allowed apartment units at a density of 8 units per acre. Although there is some dispute about the numbers, it appears that a maximum of 193 mobile home units could have been built on the Oxford Tract as augmented, while the developer was allowed to build 320 apartment units. It is not difficult to see that given this option, the developer would select the alternative which would allow him to develop more units.

*Montgomery Crossing Associates,* No. 97–15922, slip op. at 8. The lower court, however, applied the wrong legal standard for determining whether a *de facto* exclusion exists. In *Stahl v. Upper Southampton*

*Tp. Zoning Hearing Board,* 146 Pa. Cmwlth. 659, 606 A.2d 960 (1992), we stated that "although economic concerns, i.e., the degree of profit from a use, are not governing with regard to constitutional challenges, if an ordinance, through its particular requirements, make the development of a use permitted by the ordinance economically impossible, the ordinance is unconstitutional." *Stahl,* 606 A.2d at 967.

There was no evidence in this case that development of a mobile home park was economically impossible, merely an assertion that development of an apartment complex was more profitable and cost effective.[9]

The critical question is not whether one use is more profitable, but rather whether the excluded use is so unprofitable in its permitted zone as to be effectively excluded. A contrary analysis would lead to the conclusion that every zoning ordinance permitting multiple uses would unconstitutionally exclude all but the most profitable use. "So long as the property in question may be reasonably used for purposes required by the Zoning Ordinance, the owner may not legally complain." *Tidewater Oil Co. v. Poore,* 395 Pa. 89, 149 A.2d 636 (1959).

■ Finally, if a district containing available land has been zoned to permit a particular use, one may not later base a claim that the use is excluded on the fact that the land has been used for another

---

ing care facilities, and municipal uses. We explicitly discount from our analysis any areas providing low income housing for only a limited segment of the population, such as the elderly.

8. Common pleas found "When the Oxford Tract was first zoned 'E' residential in 1976, it consisted of only 33 acres and was bisected by a proposed 'North Penn Expressway.' A minimum of 25 acres was required for mobile home development in the 'E' Residential District. It is unclear whether there was 25 acres available for mobile home development on the Oxford Tract after deducting the land that would be required for the proposed ex-

pressway." We cannot reconcile the differences in acreage in the two opinions, but as the lower court did not base its decision on a finding of insufficient acreage for a mobile home park, we shall assume that "a minimum of 25 acres" was available.

9. We note further that the fact that the zoning ordinance allowed more apartment units than mobile homes per acre in no way proves that apartment units would be the most cost effective development choice. A multitude of other factors, such as construction costs and infrastructure requirements must be taken into account.

purpose instead. In other words, there is no ongoing obligation on the part of the township to rezone for mobile home parks because the vacant land in the "E" Residential District was developed for apartments. "To allow open ground in a township to be used for any purpose whatever solely because little or no undeveloped land remains in areas properly zoned for that purpose would be the antithesis of that sound planning which is the rationale for all zoning." *Kaiserman v. Springfield Township*, 22 Pa.Cmwlth. 287, 348 A.2d 467, 471 (1975). As there was substantial support in the record for the Board's finding that mobile homes were not excluded from the district, common pleas should not have overturned that finding.

For all the foregoing reasons, we reverse the order of the court of common pleas.

### *O R D E R*

AND NOW, this 28th day of August, 2000, the order of the Court of Common Pleas of Montgomery County in the above captioned matter is REVERSED.