# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re:  Appeal of the April 24, 2018   :
Decision of the Charlestown Township  :
Zoning Hearing Board Denying the   :
Challenge of Charlestown Outdoor,   :
LLC to the Validity of the Zoning    :   No. 826 C.D. 2019
Ordinance's Exclusion of Outdoor   :   Argued:  June 8, 2020
Advertising Billboards             :
                                   :
Appeal of:  Charlestown Outdoor, LLC   :


BEFORE:     HONORABLE MARY HANNAH LEAVITT, President Judge[1]
               HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ANNE E. COVEY, Judge

<u>OPINION NOT REPORTED</u>

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**                **FILED:  January 21, 2021**

Charlestown Outdoor, LLC (Applicant) appeals from a June 13, 2019 Order of the Court of Common Pleas of Chester County (common pleas), denying Applicant's appeal and thereby affirming a Decision by the Zoning Hearing Board of Charlestown Township (Board), which rejected Applicant's validity challenge to the Charlestown Township (Township) Zoning Ordinance (Ordinance) on the basis it excluded outdoor advertising billboards from within the limits of the Township. On appeal, Applicant argues there is a *de jure* exclusion of outdoor advertising billboards because there are no zoning districts within the Township that permit such billboards.  To the extent a zoning district does exist in which outdoor advertising billboards are permitted, Applicant contends there is a *de facto* exclusion of such

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Leavitt completed her term as President Judge.

billboards because there is no location that would comply with both the Ordinance's requirements and state law and regulations. Applicant further argues that the Township's failure to provide for outdoor advertising billboards is not excused by the Township's participation in a multimunicipal comprehensive plan in which other member municipalities have provided for billboard sites within a reasonable geographical area. Lastly, Applicant contends the Township did not satisfy its burden of showing a substantial relationship between the exclusion of outdoor advertising billboards and the public health, safety, morality, or welfare. Because the Ordinance is not exclusionary, either on its face or in effect, we discern no error and, accordingly, affirm.

## I. BACKGROUND

### A. Zoning Ordinance Challenge

Applicant has a leasehold interest in a portion of 3317 Phoenixville Pike, Charlestown Township, Chester County (Property), upon which Applicant plans to construct an outdoor advertising billboard. The Property is located in a Business 1 or B-1 zoning district near an interchange to the Pennsylvania Turnpike. On May 1, 2017, Applicant filed a challenge with the Board alleging the Ordinance is *de jure* and/or *de facto* exclusionary of outdoor advertising billboards and is therefore unconstitutional and invalid. Two hearings were held on the substantive validity challenge.

Thomas J. Comitta (Planning Expert) testified as an expert witness for the Township at the first hearing, in relevant part, as follows. Planning Expert served as a planning consultant for the Township for 44 years and has drafted more than 50 zoning ordinances for various municipalities. (Reproduced Record (R.R.) at 19a.)

2

In 2004, the Township amended its zoning map to change the district that had been zoned Limited Industrial 2 or LI-2 to B-1. (*Id.* at 20a-22a.) At the same time the zoning map was amended, the Ordinance was amended to reflect that the LI-2 zoning district was eliminated and replaced by the B-1 zoning district. (*Id.* at 22a-23a.) Planning Expert actually prepared the text amendment. (*Id.* at 23a.) According to Planning Expert, the Ordinance originally provided that outdoor advertising billboards were permitted in the LI-2 zoning district, but the Ordinance, as amended, now allows for outdoor advertising billboards to be erected in the B-1 zoning district. (*Id.* at 22a-23a.) The Township introduced a copy of the Ordinance as amended, which reflects references to the LI-2 zoning district being struck through and replaced with reference to the B-1 zoning district. (Ex. T-3.) Planning Expert testified that a bound copy of the Ordinance that is available for purchase at the Township building, excerpts of which were also introduced, does not reflect that change. (R.R. at 22a, 24a-25a; Ex. T-3.) Planning Expert also explained that the amendment was originally codified correctly, but when the prior company that handled the codification ceased operating, its replacement did not codify the amendment correctly. (R.R. at 24a-25a.) As a result, the online version is also wrong. (*Id.*) Despite the codification error, Planning Expert testified outdoor advertising billboards are permitted in the B-1 zoning district. (*Id.* at 24a.) He further testified on direct examination that an outdoor advertising billboard could be constructed in compliance with state regulations on a small triangular portion of the B-1 zoning district. (*Id.* at 26a-27a.) On cross-examination, when asked whether an outdoor advertising billboard could be constructed in the B-1 zoning district that complies with both state regulations and Ordinance requirements, Planning Expert responded "no." (*Id.* at 44a-45a.)

Planning Expert also testified that the Township is a member of a regional comprehensive plan, specifically, the Phoenixville Regional Comprehensive Plan, which the Township adopted in 2008. (*Id.* at 29a.) Planning Expert developed a chart listing the six member municipalities, including the Township; the zoning districts where billboards are permitted within those municipalities; and the distance from the Property to those districts. (R.R. at 31a-32a; Ex. T-5, R.R. at 147a.) In Planning Expert's opinion, the districts in the other municipalities are within the relevant trade area and, therefore, within a reasonable geographical distance. (R.R. at 36a-37a.) When asked whether the member municipalities' zoning ordinances were generally consistent with the Phoenixville Regional Comprehensive Plan, Planning Expert responded "yes." (*Id.* at 41a.) Upon cross-examination, Planning Expert acknowledged that these other sites were not located along the Pennsylvania Turnpike, as the Property is. (*Id.* at 46a.)

At the second hearing, Applicant presented the testimony of Michael T. Gillespie, Jr., who has 18 years of advertising experience and advises clients as to siting and viability of outdoor advertising locations (Advertising Expert), and Timothy Earle, director of real estate development for Catalyst Outdoor Advertising, of which Applicant is a wholly owned subsidiary (Director). Advertising Expert testified, in relevant part, as follows. The location standards upon which Planning Expert relied relate to retail shopping centers and strip malls, not outdoor advertising billboards. The primary determinant for placement of outdoor advertising billboards is the amount of vehicular traffic along a proposed site. Advertising Expert disagreed with Planning Expert's opinion that the various zoning districts identified within the Phoenixville Region that permit billboards are reasonably sufficient because Route 23 and Route 113, along which those zones are located, "are very

4

different roads altogether than the Pennsylvania Turnpike." (*Id.* at 69a-70a.) According to Advertising Expert, the Pennsylvania Turnpike averages 50,000 vehicles per day, consisting of national, regional, and local traffic, whereas the state routes would have less than half the amount of traffic, consisting of mostly local traffic. (*Id.* at 70a.) In Advertising Expert's opinion, those locations are not reasonable geographical locations for billboards. (*Id.* at 73a.)

Director testified, in relevant part, as follows. Although the chart prepared by Planning Expert identifies districts within East Pikeland Township and Schuylkill Township, both of which are member municipalities of the Phoenixville Regional Comprehensive Plan, billboards are only permitted in those districts by special exception. (*Id.* at 87a.) When the restrictions from within the member municipalities' zoning ordinances are applied, the area available to locate a billboard further shrinks. (*Id.* at 91a-93a.) According to Director, there is no location for billboards in East Pikeland Township and Schuylkill Township when the respective ordinances' restrictions are applied. In Phoenixville Borough, Director identified three locations where a billboard could be erected that would comply with that municipality's ordinance, but they were all located far off a roadway in a location he would not recommend. (*Id.* at 95a-97a.) Director further testified that as of the date of his testimony, February 12, 2018, the online version of the Ordinance still reflected that outdoor advertising billboards were only permitted in the LI-2 zoning district, which no longer existed. (*Id.* at 98a.) Upon cross-examination, Director testified that he could not say whether an existing ground sign could be removed to allow for a billboard; his review of areas where billboards are permitted was limited to the conditions as they existed at the time of his review. (*Id.* at 105a.)

## B.    Board's Decision

Based upon the evidence presented, the Board issued its Decision on April 24, 2018, denying Applicant's challenge. As to Applicant's argument that the Ordinance was *de jure* exclusionary, the Board found that the Ordinance was amended in 2004, whereby the LI-2 zoning district was repealed and replaced by, among other districts, a B-1 zoning district. (Board Decision, Finding of Fact (FOF) ¶ 7.) The Board further found that when the company that handled the codification of the Township's Ordinance changed, the amendment was not entirely included in the current codification. (*Id.* ¶ 8.) In consideration of the Charlestown Township Planning Commission minutes from April 2017, which Applicant appended to its brief to the Board, wherein Planning Expert indicated that the Ordinance needs to be updated because it still reflects the LI-2 zoning district as the location for billboards, the Board found that, based upon the context of the statement, Planning Expert was referring to the printed Ordinance available for purchase at the Township building. (*Id.* ¶ 9.) Because the Board found the Ordinance was amended, as Planning Expert testified, to replace the LI-2 zoning district with the B-1 zoning district, and billboards are permitted in the B-1 zoning district, the Board concluded there was no *de jure* exclusion. (Board Decision, Conclusion of Law ¶ 1.)

The Board also rejected Applicant's argument that the Ordinance was *de facto* exclusionary. In reaching this result, the Board found that the Ordinance was amended in December 2004 and the Turnpike slip ramp was not constructed for at least another five years. (FOF ¶ 16.) Because the interchange was not in existence at the time the B-1 zoning district was created, the Board, while acknowledging the state regulation prohibiting billboards within 500 feet of an interchange, found the condition was not imposed by the Township. (*Id.* ¶¶ 17, 19-20.) The Board also

6

found Planning Expert testified that there is a small portion within the B-1 zoning district that falls outside the 500-foot regulatory area. (*Id.* ¶ 21.)

Finally, the Board found that the Township adopted the Phoenixville Regional Comprehensive Plan in 2008, and the six member municipalities have zoning ordinances that are generally consistent with that plan. (*Id.* ¶¶ 22, 25-26.) The Board further found that those municipalities allow billboards within certain zoning districts that are within a reasonable geographical area, approximately four to five miles, of the Township's B-1 zoning district. (*Id.* ¶¶ 27-30, 32.) Therefore, the Board found that, under Section 916.1(h) of the Pennsylvania Municipalities Planning Code[2] (MPC), 53 P.S. § 10916.1(h), it could consider these other areas outside of the Township and conclude that the Ordinance was not exclusionary. (*Id.* ¶¶ 23, 32.)

Accordingly, the Board denied both of Applicant's substantive validity challenges.

---

[2] Act of July 31, 1968, P.L. 805, *as amended*, added by Section 99 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10916.1(h), which provides:

> Where municipalities have adopted a multimunicipal comprehensive plan . . . but have not adopted a joint municipal ordinance . . . and all municipalities participating in the multimunicipal comprehensive plan have adopted and are administering zoning ordinances generally consistent with the provisions of the multimunicipal comprehensive plan and a challenge is brought to the validity of a zoning ordinance of a participating municipality involving a proposed use, then the zoning hearing board or governing body, as the case may be, shall consider the availability of uses under zoning ordinances within the municipalities participating in the multimunicipal comprehensive plan within a reasonable geographical area and shall not limit its consideration to the application of the zoning ordinance of the municipality whose zoning ordinance is being challenged.

*Id.*

7

## C.    Common Pleas Opinion and Order

Applicant appealed the Board's Decision to common pleas, which took no additional evidence.[3]  Upon review of the record and consideration of the parties' briefs, common pleas denied Applicant's appeal and affirmed the Board's Decision. Common pleas found the Board did not err in finding there was a codification error, which was not attributable to the Township.  (Common pleas' Opinion (Op.) at 7.) Therefore, the Ordinance was not *de jure* exclusionary.

As for the issue of whether the Ordinance is *de facto* exclusionary, common pleas found this issue was "waived because the parties have provided no authority directly on point with this issue and because [the Pennsylvania Department of Transportation (Department)] was not joined as a necessary party to this action." (*Id.* at 9-10.)  Common pleas stated that even if it had jurisdiction over this issue, Applicant could not prevail because, at the time the Ordinance was amended, the slip ramp that has now triggered the Department's regulation prohibiting billboards within 500 feet of same was not yet constructed.  (*Id.* at 10.)  Citing this Court's decision in *Montgomery Crossing Associates v. Township of Lower Gwynedd*, 758 A.2d 285 (Pa. Cmwlth. 2000), common pleas explained that when the Ordinance was enacted, billboards could have been constructed in the B-1 zoning district, and it was the intervening construction of the slip ramp that now prohibits the use of billboards.  (Common pleas' Op. at 10.) Common pleas stated that to conclude the Ordinance is exclusionary under such circumstances "would lead to the absurd result of creating an ongoing, impractical[] obligation for the Township to rezone and

---

[3] Because common pleas took no additional evidence, common pleas' review was, as is ours, limited to determining whether the Board erred as a matter of law or abused its discretion. *Williams Holding Grp., LLC v. Bd. of Supervisors of W. Hanover Twp.*, 101 A.3d 1202, 1211 n.8 (Pa. Cmwlth. 2014).

8

update[] its [] Ordinance every time an intervening condition not caused by the Township occurred." (*Id.*)

Finally, common pleas found the Ordinance was neither *de jure* nor *de facto* exclusionary based upon the Township's adoption of the Phoenixville Regional Comprehensive Plan. Common pleas recognized there was conflicting testimony from the parties' respective witnesses as to what was a reasonable geographical area, but noted that the Board credited Planning Expert's testimony that the zoning districts identified in the other member municipalities permitting billboards were within a reasonable geographical area to the Township's B-1 zoning district. (*Id.* at 7-8, 10-11.) Accordingly, common pleas denied Applicant's appeal and affirmed the Board's Decision. Applicant now appeals to this Court.[4]

## II. PARTIES' ARGUMENTS

### A. Applicant's Arguments

On appeal, Applicant raises four issues:[5] (1) whether the Ordinance is *de jure* exclusionary of outdoor advertising billboards; (2) whether the Ordinance is *de facto* exclusionary of outdoor advertising billboards due to the government regulations and other restrictions in the Ordinance; (3) whether the Township can invoke Section

---

[4] Upon filing its notice of appeal, common pleas ordered Applicant to file a statement of errors complained of on appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1925(b), which Applicant did, wherein Applicant raised the same issues currently before the Court. On August 8, 2019, common pleas issued an Order in Lieu of Rule 1925(a) Opinion (Rule 1925(a) Order), in which common pleas noted that it had already adequately addressed the issues of *de jure* and *de facto* exclusion and the applicability of Section 916.1(h) of the MPC, and, therefore, it would not write again separately on those issues. As for Applicant's argument that the "Board abused its discretion and committed an error of law in failing to find that the Township failed to satisfy its burden," common pleas found that issue was too vague to permit meaningful review. (Rule 1925(a) Order at 3-4.)

[5] Applicant's arguments have been reordered for ease of discussion.

9

916.1(h) of the MPC as a defense to preclude a finding of exclusion based upon its participation in the Phoenixville Regional Comprehensive Plan, in which other member municipalities permit billboards within a reasonable geographical area of the Township's B-1 zoning district; and (4) whether the Township satisfied its burden of showing a substantial relationship between the exclusion and public health, safety, morality, and welfare.

With regard to whether the Ordinance is *de jure* exclusionary, Applicant argues that the Ordinance only permits outdoor advertising billboards in an LI-2 zoning district, of which there are none. Applicant argues that despite the testimony of Planning Expert that the Ordinance was amended in 2004, the Ordinance at the time Applicant filed its zoning challenge did not reflect any change to allow outdoor advertising billboards in the B-1 zoning district. According to Applicant, the Township has been aware that the Ordinance does not reflect the alleged amendment since at least 2017 when Planning Expert brought it to the Planning Commission's attention. Applicant contends that the minutes from that meeting show the Ordinance was not updated and the Board's finding that Planning Expert was referring to the copy of the Ordinance available for purchase and not the official Ordinance is without support in the record.

Applicant also argues that the Ordinance is *de facto* exclusionary because it is impossible to comply with both state regulations governing the placement of billboards near interchanges and the Ordinance's requirements regarding location. Applicant asserts that the Ordinance requires billboards to be constructed a minimum of 5 feet and a maximum of 30 feet from the Pennsylvania Turnpike right-of-way, and state regulations prohibit a billboard to be constructed within 500 feet of an interchange. When these requirements are taken into consideration, Applicant

10

argues a billboard cannot be lawfully constructed in the B-1 zoning district. Applicant contends that the Board "wrongfully gave credence" to Planning Expert who testified there was a small area in the B-1 zoning district that falls outside the 500-foot requirement because, on cross-examination, Planning Expert acknowledged that there is no place that satisfied both the state and local requirements. (Applicant's Brief (Br.) at 14.)

Applicant next asserts that the Board erred in finding that the Township was not at fault for any exclusion that resulted from the construction of the slip ramp because it was constructed long after the Ordinance was enacted. Applicant argues that the Township's reliance on *Montgomery Crossing* and *Kaiserman v. Springfield Township*, 348 A.2d 467 (Pa. Cmwlth. 1975), is misplaced because those cases involved development of other permitted uses on the land, whereas here the land remains undeveloped. In short, there is not an existing use that could be demolished to make room for a billboard because the state regulations foreclose such development in that area. According to Applicant, "[t]he issue is whether 'in application' the use is excluded, not whether there was an intent to exclude." (Applicant's Br. at 17 (emphasis omitted).) Applicant asserts the Township could have amended its Ordinance in light of the regulations and construction of the slip ramp but has not done so.

In addition, Applicant argues that the Township cannot invoke Section 916.1(h) of the MPC as a defense to the substantive validity challenges. Applicant argues that mere participation in a multimunicipal comprehensive plan is not enough; rather a municipality must show that each member municipality adopted generally consistent ordinances and the availability of the use in the other municipalities is within a reasonable geographic area. Here, Applicant contends, the

Township presented no evidence to satisfy these requirements except for Planning Expert's "blanket conclusory statement." (*Id.* at 25.) Applicant argues that such evidence is insufficient under *Gorsline v. Board of Supervisors of Fairfield Township*, 186 A.3d 375 (Pa. 2018). Applicant points out there is no discussion of billboards in the Phoenixville Regional Comprehensive Plan, and each member municipality separately zoned for billboards, which evidences that there was no joint plan for billboard placement. Applicant asserts Section 916.1(h) was intended to protect against validity challenges when there is "good planning," but the Township's argument that the mere existence of a multimunicipal plan without any evidence of planning goes against the purpose of the provision. (*Id.* at 30.)

Finally, Applicant asserts that, contrary to common pleas' conclusion, it did not waive its argument related to whether the Township met its burden of proof in this matter. Applicant argues that it has asserted throughout the litigation that the Township did not show a substantial relationship between the exclusion of billboards and the health, safety, morality, or welfare of the public. Applicant states that once it met its burden of showing the Ordinance was exclusionary, the burden shifted to the Township, and here, the Township presented no evidence to support its position.

For the foregoing reasons, Applicant asks the Court to reverse common pleas' Order and remand the matter for common pleas to fashion site-specific relief.

## B.    Township's Arguments

The Township responds that its Ordinance is neither *de jure* nor *de facto* exclusionary. The Township asserts it presented a copy of the Ordinance showing it was properly amended to reflect the change from LI-2 to B-1 and the company responsible for publishing the Ordinance on its website erred. Because the

12

Ordinance allows for outdoor advertising billboards in the B-1 zoning district, the Ordinance is not *de jure* exclusionary, the Township maintains.

The Township further asserts that the Ordinance is not *de facto* exclusionary. It cites *Montgomery Crossing* for the proposition that an exclusionary challenge cannot be based upon property within a designated zone being used for something else in the meantime. It argues there is no "ongoing obligation to rezone for a certain use when vacant land is developed for another purpose." (Township's Br. at 15-16.) Here, the Township contends the Ordinance, as amended, was adopted in December 2004, and construction on the interchange/slip ramp did not begin until March 2011. Therefore, the Township argues the Ordinance is not *de facto* exclusionary.

Next the Township argues that it is part of the Phoenixville Regional Comprehensive Plan along with five other municipalities. As a result, the Township argues, the Board had to consider whether billboards were permitted by those other municipalities. The Township points to Planning Expert's testimony that there are multiple other sites within a reasonable geographical area of less than five miles of the B-1 zoning district where billboards are permitted. As for Applicant's attempt to challenge Planning Expert's testimony as incompetent, the Township argues *Gorsline* is distinguishable because there the expert gave conflicting testimony.

Finally, the Township argues that Applicant waived its right to seek site-specific relief by not raising it before the Board. Therefore, in the event the Court determines the Ordinance is exclusionary, the Township argues Applicant is not entitled to site specific relief.

Based upon the foregoing, the Township asks the Court to affirm common pleas' Order.

13

## III.  DISCUSSION

### A.  General Legal Principles

As a preliminary matter, as stated by the Supreme Court, "billboards are not objectionable *per se*."  *Township of Exeter v. Zoning Hearing Bd. of Exeter Twp.*, 962 A.2d 653, 660 (Pa. 2009).  Billboards have been recognized as a legitimate use of property, and, while they may be regulated, billboards cannot be entirely excluded from a municipality through its zoning ordinance.  *Adams Outdoor Advert., LP v. Zoning Hearing Bd. of Smithfield Twp.*, 909 A.2d 469, 477 (Pa. Cmwlth. 2006).  "Zoning ordinances that exclude uses fall into one of two categories—*de jure* or *de facto*."  *Township of Exeter*, 962 A.2d at 659.  A *de jure* exclusion exists if the "ordinance[,] on its face[,] totally excludes a use."  *Id*.  In contrast, a *de facto* exclusion exists if, when applied, the ordinance effectively acts to prohibit a use that is otherwise permitted.  *Id*.

Generally, a municipality's zoning ordinance is entitled to a presumption that it is constitutionally valid.  *Interstate Outdoor Advert., L.P. v. Zoning Hearing Bd. of Warrington Twp.*, 39 A.3d 1019, 1024 (Pa. Cmwlth. 2012).  To overcome this presumption, the party challenging the ordinance bears a heavy burden to show the ordinance completely or effectively excludes an otherwise legitimate use.  *Id.*  The mere fact that an ordinance does not specifically address a use does not necessarily mean the ordinance is invalid.  *Caln Nether Co., L.P. v. Bd. of Supervisors of Thornbury Twp.*, 840 A.2d 484, 491 (Pa. Cmwlth. 2004).  Rather, we must consider whether the proposed use falls within a specifically provided for use.  *Id.*  "When a proposed use can be considered within another zoning classification or, where the zoning ordinance is broad enough to encompass the proposed use, there is no *de jure* exclusion."  *Id.*  In addition, if an ordinance conditionally permits a use as a special

14

exception, it is not *de jure* exclusionary. *Kratzer v. Bd. of Supervisors of Fermanagh Twp., Juniata Cnty.*, 611 A.2d 809, 814 (Pa. Cmwlth. 1992). In examining whether a proposed use is covered by an ordinance, "we are mindful that ordinances are to be construed expansively, affording the landowner the broadest possible use and enjoyment of his or her land." *Atiyeh v. Bd. of Comm'rs of the Twp. of Bethlehem*, 41 A.3d 232, 236 (Pa. Cmwlth. 2012).

Whether an "ordinance is exclusionary is a question of law, reviewable by this Court." *Wimer Realty, LLC v. Township of Wilmington*, 206 A.3d 627, 640 (Pa. Cmwlth. 2019). Courts examine whether an ordinance is exclusionary using a two-step analysis:

> [F]irst [we] consider whether the challenging party has overcome the presumed constitutionality of an ordinance by showing it excludes [the proposed use] as a use. If we determine the challenger has done so, we then consider whether the municipality has salvaged the ordinance by presenting evidence to show that the exclusionary regulation bears a substantial relationship to the public health, safety, morality, or welfare.

*Township of Exeter*, 962 A.2d at 661. Only if a challenger rebuts the presumption that the ordinance is valid does the burden shift to the municipality to demonstrate that the exclusion promotes the public health, safety, morality, and welfare. *Atiyeh*, 41 A.3d at 236.

Finally, it bears emphasis that the Board is the exclusive judge of the credibility of witnesses and the weight to be afforded to evidence. *Taliaferro v. Darby Twp. Zoning Hearing Bd.*, 873 A.2d 807, 811 (Pa. Cmwlth. 2005). Therefore, we may not substitute our "interpretation of the evidence for that of the . . . [B]oard." *Id.* As we have previously stated "we cannot, as super zoning boards . . . , impose our preferences upon local municipalities." *Eighteenth & Rittenhouse Assocs. v. Zoning Bd. of Adjustment*, 364 A.2d 973, 975 (Pa. Cmwlth. 1976).

15

With the above principles in mind, we turn to the issues here.

**B.    *De Jure* Exclusion**

We begin with Applicant's argument that the Ordinance, on its face, does not provide for a location for outdoor advertising billboards. This argument is premised on the fact that the Ordinance, at least as available to the public, provides that outdoor advertising billboards are only permitted in the LI-2 zoning district, of which there are none. The Township maintains it amended its Ordinance in 2004 to reflect the replacement of the LI-2 zoning district with the B-1 zoning district, which is where outdoor advertising billboards are permitted. However, the Township maintains the company that handles codification of its ordinances erred when it codified this Ordinance.

Simply, if the Ordinance does not provide for a location for outdoor advertising billboards, it would be invalid as *de jure* exclusionary. Here, though, the Board credited the testimony and evidence presented by the Township that supports its claim that the Ordinance does, in fact, provide for outdoor advertising billboards but, because of a codification error, it does not appear that way. Planning Expert testified that he personally prepared the amendment to the Ordinance in 2004. (R.R. at 22a.) The Township introduced, in support of this testimony, a copy of the Ordinance showing references to the LI-2 zoning district struck through and replaced by the B-1 zoning district, and Planning Expert explained that the other version of the Ordinance was from a bound copy available for purchase. (*Id.*; Ex. T-3.) In addition, in response to a request by Applicant for a signed copy of the Ordinance, the Township introduced a copy of the Ordinance signed by the Township's Board of Supervisors dated December 20, 2004, wherein it states that reference to the LI-2

16

zoning district was being deleted and replaced by the B-1 zoning district. (Ex. T-10, R.R. at 155a-88a.) Therefore, there is substantial evidence of record to support the Board's conclusion that the Township did properly amend its Ordinance but, due to a codification error, the copies available to the public do not reflect this change.

We understand Applicant's and the public's potential confusion given what is available online and for purchase is incorrect. However, the Ordinance as adopted is the controlling document, and it provides that outdoor advertising billboards are permitted in the B-1 zoning district. This Court has previously examined issues with codification in *In re Appeal of Tenet HealthSystems Bucks County, LLC*, 880 A.2d 721 (Pa. Cmwlth. 2005). In that case, Tenet sought *nunc pro tunc* relief to file a tax assessment appeal based upon an error in *Purdon's Statutes*, which provided for a different time period to appeal than the statute itself. The trial court denied *nunc pro tunc* relief, and we affirmed. We explained that the Pennsylvania Consolidated Statutes are the "official codifications enacted by the General Assembly," whereas *Purdon's* is "the unofficial codification and annotation of Pennsylvania's Pamphlet Laws" and is published by West Publishing Company. *Tenet HealthSystems*, 880 A.2d at 725. We further explained that "[e]ven our rules of court require that the official editions of statutes be used, *i.e.*, the pamphlet laws." *Id.* at 726. Here, the Ordinance that was adopted by the Board of Supervisors is the controlling document, similar to the pamphlet laws enacted by the state legislature. The fact that a third-party commercial publisher codified the Ordinance incorrectly does not reflect on the Township.

We similarly cannot fault the Township for the codification error of the company that publishes the Township's ordinances. The Township properly amended the Ordinance. The original company responsible for codification

17

correctly did so, but through no fault of the Township, the company that replaced the original company did not.

As for Applicant's argument that the Board misinterpreted evidence, specifically Planning Commission minutes that show the Ordinance was not amended, we disagree. The minutes in question state:

> [Planning Expert] stated that the [] Ordinance refers to district "LI" in regards to billboards. There is no longer an LI zone in the Township. Therefore, the Ordinance needs to be updated to refer to the proper district. It should say "IO" [Industrial Office[6]]. [Someone] will initiate this change for the Township.

(April 11, 2017 Planning Commission Minutes appended to Applicant's Brief to the Board.)

The Board found that "the context of [Planning Expert]'s statement supports a finding that he meant the printed ordinance for purchase by the public and not the enacted . . . Ordinance . . . ." (FOF ¶ 9.) While true that the minutes are silent as to which "Ordinance" Planning Expert was referring, coupled with his testimony that the bound copy available for purchase was incorrect, we cannot say that the Board's interpretation is incorrect.

In summary, Planning Expert's testimony, coupled with the exhibits introduced by the Township, provide substantial evidence to support the Board's finding that the Ordinance was, in fact, amended in 2004 to permit billboards in the B-1 zoning district. Therefore, the Board did not err in concluding that the Ordinance is not *de jure* exclusionary.

---

[6] According to the signed Ordinance, introduced as Township Exhibit T-3, when the Ordinance was amended in 2004, the LI District was replaced by the Industrial/Office/Business or I/O/B Districts, wherein the former LI-2 District became the B-1 District.

18

## C.   *De Facto* Exclusion

Applicant further argues that the Ordinance constitutes a *de facto* exclusion because compliance with requirements in both state regulations and the Ordinance yields no location within the B-1 zoning district in which an outdoor advertising billboard can be constructed.

Pennsylvania enacted the Outdoor Advertising Control Act of 1971[7] (Act), which sets forth standards for the erection and maintenance of outdoor advertising devices located adjacent to the interstate and primary road systems within the Commonwealth.   Pursuant to the Act, the Department promulgated regulations governing outdoor advertising devices.  At issue here is Section 445.4(b)(2)(i) of the Department's regulations, which provides, in pertinent part, that no sign "may be erected adjacent to or within 500 feet of an interchange or safety rest area, measured along the interstate or limited access primary from the beginning or ending of pavement widening at the exit from or entrance to the main-traveled way."  67 Pa. Code § 445.4(b)(2)(i).

In addition, the Ordinance imposes further restrictions on location providing, in pertinent part:  "Outdoor advertising billboards shall be located only a minimum of [5] feet and a maximum of 30 feet from the Pennsylvania Turnpike east-west travel lanes right-of-way."  (Ordinance § 27-1405.13.B, R.R. at 125a.)

The parties do not appear to dispute that, when both sets of location restrictions are applied, there is no place within the B-1 zoning district where an outdoor advertising billboard can be constructed.   Although Planning Expert testified on direct examination that there is a small area where one could construct a billboard and still comply with the 500-foot state requirement, on cross-examination,

_____

[7] Act of December 15, 1971, P.L. 596, *as amended*, 36 P.S. §§ 2718.101-2718.115.

19

Planning Expert admitted that area would be outside the Ordinance's location requirements.[8] (R.R. at 26a-27a, 44a-45a.)

Instead, the Township argues, in part, that its Ordinance is not constitutionally invalid because at the time it was enacted in 2004, the slip ramp that now precludes construction of an outdoor advertising billboard in the B-1 zoning district was not yet constructed and its subsequent construction should not render the Ordinance exclusionary. In support of this argument, the Township cites to our decision in *Montgomery Crossing*. In that case, a developer filed an application for a curative amendment of the township's zoning ordinance on the basis it excluded mobile home parks.[9] *Montgomery Crossing*, 758 A.2d at 286. The board of supervisors rejected the curative amendment, finding, in relevant part, that mobile home parks are permitted in the "E" Residential District, which comprises 45 acres of the township, and at the time the ordinance was enacted, those acres were vacant, but since that time, another permitted use, specifically apartments, was constructed. *Id.* at 289-90. The court of common pleas reversed, concluding that it was more profitable to construct 320 apartments than install 193 mobile homes. *Id.* at 290. On appeal, we stated the court of common pleas erred in applying the wrong legal standard for a *de facto* exclusion. *Id.* We stated "[t]he critical question is not whether one use is more

---

[8] Applicant takes issue with the Board's finding that Planning Expert "testified that there is a small part of the B-1 zoning district outside the 500[-]feet [Department] prohibition that is available for billboard use." (FOF ¶ 21.) However, we note the finding only discusses the 500-foot limitation imposed by the Department's regulations. The finding is silent as to whether that area can also comply with the Ordinance's requirements. Therefore, we discern no error in this finding. Furthermore, we note that this finding appears to have played no role in the Board's decision. As discussed more fully herein, the Board's determination was based upon the construction of the slip ramp after enactment of the Ordinance and the Township's participation in the Phoenixville Regional Comprehensive Plan.

[9] Also at issue was whether the ordinance excluded certain commercial uses, the analysis of which is not applicable here.

20

profitable, but rather whether the excluded use is so unprofitable in its permitted zone as to be effectively excluded." *Id.* Importantly here, we also stated that "if a district containing available land has been zoned to permit a particular use, one may not later base a claim that the use is excluded on the fact that the land has been used for another purpose instead." *Id.* at 290-91. We continued, "[i]n other words, there is no ongoing obligation on the part of the township to rezone for mobile home parks because the vacant land in the "E" Residential District was developed for apartments." *Id.* at 291. Accordingly, we found there was substantial evidence in the record to support the board of supervisors' determination that mobile home parks were not excluded. *Id.*

A quarter of a century earlier, we reached a similar conclusion in *Kaiserman*. There, a developer challenged the township's ordinance on the basis it resulted in a *de facto* exclusion of apartments. The board of supervisors upheld the ordinance, and the court of common pleas affirmed, as did this Court. We explained that since 1940, 408 acres of the township were zoned to permit multi-family dwellings in 4 different districts. *Kaiserman*, 348 A.2d at 470. At the time of the appeal, however, there was no dispute that "no appreciable amount of vacant land remain[ed] to be developed" in those districts because the area was developed for single-family homes in the meantime. *Id.* at 469-70. We distinguished the facts in *Kaiserman* from prior cases where the exclusion of a use "was accomplished by the zoning ordinance [a]lone." *Id.* at 470. We stated that the developer had not challenged that, at the time the ordinance was enacted, the amount of land zoned for multi-family dwellings was "a 'token' amount." *Id.* Instead, we held that the developer was asking the Court "to invalidate the [o]rdinance because it might be more

21

advantageous for [it] to develop the land [it] currently own[s] than to assemble already developed land for [its] purposes." *Id.* We stated:

> While it may be inherently discriminatory for a township to totally exclude a use from its borders, we fail to see the analogy by which we could reason that a legitimately appropriated area for a specific use which has been saturated is in the same posture as a total prohibition of that use within a municipality.

*Id.* at 471 (quoting *Appeal of Groff*, 274 A.2d 574, 575 (Pa. Cmwlth. 1971)). Accordingly, we agreed that the developer had not met its burden of showing the ordinance excluded apartments. *Id.*

We examine the substantive validity of an ordinance based upon conditions as they existed at the time of an ordinance's enactment on other occasions. In *In re Glen Loch Two Associates, L.P.* (Pa. Cmwlth., No. 45 C.D. 2012, filed November 29, 2012),[10] an applicant asserted a substantive validity challenge to an ordinance on the basis it effectively excluded mobile home park development. The township denied the challenge and a proposed curative amendment finding that, at the time the ordinance was enacted in 1986, there were multiple areas that could have been used for such development. On appeal, we affirmed the township's decision. The Court found that although one of the areas was rendered unavailable for development after the Department condemned a large portion for construction of a bypass, "the record d[id] not reflect that at the time of the adoption of the zoning ordinance in 1986 that this area was not available for development." *In re Glen Loch*, slip op. at 15. We also noted that the record was devoid of any evidence that the Department

---

[10] *In re Glen Loch* is an unreported panel decision of this Court, which may be cited for its persuasive value pursuant to Rule 126(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

condemned the property "*prior* to the enactment of the current zoning ordinance." *Id.* at 16 (emphasis in original).

The Township here argues that the subsequent construction of the slip ramp to the Pennsylvania Turnpike, over which it had no control, is responsible for effectively zoning outdoor advertising billboards out of the B-1 zoning district. Applicant responds that these cases are distinguishable because in those cases, the land that was zoned for a particular use was actually used for another permitted use, whereas here, the Property is vacant. Although we agree that those cases involved the intervening use of the land through development on the land itself, we discern no reason why the same logic should not apply when construction on an adjacent property forecloses development of the subject property. Neither situation is attributable to the actions of the municipality; it was the acts of third parties that prevented development. Here, contrary to the minority's view, the Ordinance itself does not prevent the construction of an outdoor advertising billboard in the Township; it is the Act and the Department's regulations, coupled with the subsequent construction of the slip ramp, that does.[11] Because the Township has no control over what statutes the General Assembly passes or what regulations a

---

[11] The minority relies upon an unreported panel decision of the Court, *Habit OPCO v. Borough of Dunmore* (Pa. Cmwlth., No. 2312 C.D. 2010, filed April 21, 2011). In that case, the landowner filed a substantive validity challenge to the borough's zoning ordinance alleging methadone treatment facilities were excluded from the borough. The ordinance there had certain restrictions on how close such a facility could be to other types of uses. The Court held several of the provisions of the ordinance were invalid as violative of the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213, and federal case law striking down similar provisions. *Habit OPCO*, slip op. at 5. With regard to a provision in the ordinance requiring conditional uses, such as a methadone treatment facility to be at least 1,000 feet from existing developments, based upon precedent, we held the requirement was exclusionary. *Id.* at 8. Unlike *Habit OPCO*, though, it is not solely a setback requirement in the Township's Ordinance that precludes an outdoor advertising billboard in the Township. Again, it is the Act and the Department's regulations and the subsequent construction of the slip ramp that does.

23

Commonwealth agency promulgates, the resulting effect of those statutes or regulations cannot be impugned to the Township.

To hold otherwise would require a municipality to rezone based upon another's use of its land. We rejected imposing an "ongoing obligation" on a municipality in *Montgomery Crossing*, 758 A.2d at 291, and, based upon the facts of this case, we do the same here. *See also Larock v. Bd. of Supervisors of Sugarloaf Twp.*, 961 A.2d 916, 927 (Pa. Cmwlth. 2008) (citing *Montgomery Crossing* and holding, in relevant part, that "[a] municipality should not necessarily be required to designate a new area for mineral extraction where an established mineral extraction zone within the township has been depleted"). Similar to *In re Glen Loch*, there is no record evidence that the Department had already acquired or condemned the property used for the slip ramp at the time the Township amended the Ordinance in 2004. Nor is there any evidence that the Township underwent a massive rewrite of its Ordinance since the slip ramp was constructed that might prompt some sort of obligation on its part to update its Ordinance in this regard, as well. The record establishes that the Ordinance was enacted in 2004 and the slip ramp to the Pennsylvania Turnpike was not constructed until at least five years later. (FOF ¶ 16.) Thus, we find no error in the Board's conclusion that the subsequent construction of the slip ramp did not render the Ordinance *de facto* exclusionary.[12]

---

[12] Given our disposition, it is unnecessary to reach Applicant's arguments related to whether Section 916.1(h) of the MPC applies or whether the Township met its burden of proving a substantial relationship between the exclusion and the public's health, safety, morality, or welfare.

## IV. CONCLUSION

Because Applicant has not met its heavy burden of showing the Ordinance completely or effectively excludes the use of outdoor advertising billboards from the Township, Applicant has not successfully rebutted the presumption that the Ordinance is constitutionally valid. *Interstate Outdoor Advert.*, 39 A.3d at 1024. Having concluded the Ordinance is neither *de jure* nor *de facto* exclusionary, we affirm the Order of common pleas, affirming the Board's Decision.

 

 

_____

**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of the April 24, 2018 :
Decision of the Charlestown Township :
Zoning Hearing Board Denying the :
Challenge of Charlestown Outdoor, :
LLC to the Validity of the Zoning : No. 826 C.D. 2019
Ordinance's Exclusion of Outdoor :
Advertising Billboards :
:
Appeal of: Charlestown Outdoor, LLC :

# **O R D E R**

    **NOW**, January 21, 2021, the Order of the Court of Common Pleas of Chester County, dated June 13, 2019, is **AFFIRMED.**

                                        _____

                                        **RENÉE COHN JUBELIRER,** Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of the April 24, 2018 Decision   :
of the Charlestown Township Zoning Hearing   :
Board Denying the Challenge of Charlestown   :
Outdoor, LLC to the Validity of the Zoning   :
Ordinance's Exclusion of Outdoor Advertising   :
Billboards   :
   :   No. 826 C.D. 2019
Appeal of: Charlestown Outdoor, LLC   :   Argued: June 8, 2020

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
   HONORABLE RENÉE COHN JUBELIRER, Judge
   HONORABLE ANNE E. COVEY, Judge

<u>OPINION NOT REPORTED</u>

CONCURRING/DISSENTING OPINION
BY PRESIDENT JUDGE LEAVITT   FILED: January 21, 2021

     I agree with the majority that the Charlestown Township Zoning Ordinance (Zoning Ordinance) is not *de jure* exclusionary because it permits outdoor advertising billboards in the B-1 Zoning District. However, it is impossible to place an outdoor billboard in that district. Respectfully, I dissent from the majority's holding that the Zoning Ordinance is not *de facto* exclusionary.

     Charlestown Outdoor, LLC (Applicant) seeks to erect an outdoor advertising billboard in Charlestown Township. The Zoning Ordinance requires billboards to be located in the B-1 Zoning District and "a minimum of five feet and a maximum of 30 feet from the Pennsylvania Turnpike east-west travel lanes right-of-way." TOWNSHIP OF CHARLESTOWN, PA., ZONING ORDINANCE §§27-1405.C and 27-1405.13.B. In 2011, the Commonwealth built a Turnpike interchange in the B-1 Zoning District. A regulation of the Pennsylvania Department of Transportation prohibits the placement of outdoor advertising signs "adjacent to or within 500 feet

of an interchange" along an interstate, such as the Pennsylvania Turnpike.  67 Pa. Code §445.4(b)(2)(i).[1]  As a result of these state and local restrictions, it is unlawful to erect an outdoor advertising billboard in the B-1 Zoning District or anywhere in the Township.  The Zoning Ordinance is, thus, exclusionary.[2]

A *de facto* exclusion of a legitimate business use exists where a zoning ordinance purports to allow a use but, when applied, actually prohibits the use throughout the municipality.  *De Angelo v. North Strabane Zoning Hearing Board,* 208 A.3d 156 (Pa. Cmwlth. 2019).  That is the case here.  In actuality, the Zoning Ordinance does not allow an outdoor billboard anywhere in the Township and, thus, it is *de facto* exclusionary.

---

[1] It states:

> (b) *Maintenance.* A sign may not be erected or maintained inconsistent with the following criteria:
>
> * * *
>
> (2) *Spacing of signs.* Spacing of signs shall include the following:
>
>> (i) Along the interstate system and limited access highways on the primary system, no two sign structures may be spaced less than 500 feet apart; and outside the boundaries of cities of all classes and boroughs, *no structure may be erected adjacent to or within 500 feet of an interchange or safety rest area, measured along the interstate or limited access primary from the beginning or ending of pavement widening at the exit from or entrance to the main-traveled way.*

67 Pa. Code §445.4(b)(2)(i) (emphasis added).

[2] Pennsylvania law requires a municipality to authorize all legitimate non-residential land uses somewhere within its boundaries.  *Beaver Gasoline Company v. Zoning Hearing Board of Borough of Osborne*, 285 A.2d 501, 503-04 (Pa. 1971).  Billboards are a legitimate use of property. *Township of Exeter v. Zoning Hearing Board of Exeter Township*, 962 A.2d 653, 660 (Pa. 2009). Therefore, although a municipality may reasonably regulate this legitimate use of the land, it may not entirely exclude the use.  *Norate Corporation, Inc. v. Zoning Board of Adjustment of Upper Moreland Township*, 207 A.2d 890, 895 (Pa. 1965).

The majority holds otherwise. It relies upon *Montgomery Crossing Associates v. Township of Lower Gwynedd*, 758 A.2d 285 (Pa. Cmwlth. 2000), and *Kaiserman v. Springfield Township*, 348 A.2d 467 (Pa. Cmwlth. 1975).

In *Montgomery Crossing*, the landowner challenged the zoning ordinance as unlawfully excluding mobile home parks from the township. When enacted, the zoning ordinance zoned approximately 45 acres of vacant land for mobile home parks and apartment buildings. Over time, however, the land was developed with apartments and not with mobile homes. This Court explained that "if a district containing available land has been zoned to permit a particular use, one may not later base a claim that the use is excluded on the fact that the land has been used for another purpose instead." 758 A.2d at 290. We rejected the landowner's claim that the zoning ordinance was exclusionary.

In *Kaiserman*, the township's 1940 ordinance had zoned 408 acres of vacant land for single-family and multi-family dwellings in one district. Over time, the land was developed with single-family homes, not apartments. The landowners filed a substantive validity challenge asserting that only a "token" amount of land remained available for apartments. *Kaiserman*, 348 A.2d 469. This Court held that where land appropriated for a "specific use [] has been saturated," this does not constitute a prohibition of that specific use. *Id*. at 471. We noted, for example, that the landowner could demolish existing single-family homes and replace them with apartments. This Court observed that where land is "full," "courts should not require that the municipality continually rezone land to apartment, commercial or trailer uses in order to make land continuously available for these purposes." *Id.* at 471 n.3 (citation omitted). Otherwise, the township would have to allow whatever vacant land remains undeveloped to be "used for any purpose whatever," and this "would

MHL-3

be the antithesis of that sound planning, which is the rationale for all zoning." *Id.* at 471.

The holdings in *Montgomery Crossing* and *Kaiserman* are limited to their facts. They establish that a zoning ordinance is not rendered exclusionary where the municipality's vacant land is developed with one permitted use and not the other. These holdings are irrelevant because this is not a land saturation case. There are no existing structures in the B-1 Zoning District that can be demolished, as in *Kaiserman*, and replaced with a billboard. Applicant cannot demolish a Turnpike interchange.

Effectively, the majority holds that under *Montgomery Crossing*, the validity of a zoning ordinance is determined as of the date of its enactment. This position was specifically rejected in *Habit OPCO v. Borough of Dunmore* (Pa. Cmwlth., No. 2312 C.D. 2010, filed April 21, 2011) (unreported).[3] In that case, Habit OPCO challenged, in part, a provision in the zoning ordinance that required a methadone clinic to be sited 1,000 feet from existing developments as *de facto* exclusionary because there was no plot in the borough large enough to accommodate that setback requirement. The borough argued that the validity of the zoning ordinance should be judged at the time the ordinance was enacted, not presently. Distinguishing *Montgomery Crossing,* this Court explained that "we have never required a party alleging exclusionary zoning to affirmatively prove the challenged ordinance was exclusionary when enacted." *Id.*, slip op. at 7. We further explained that it was the setback requirements that made the zoning ordinance *de facto* exclusionary, not the lack of vacant land. Likewise here, it is the setback

---

[3] An unreported panel decision of this Court, "issued after January 15, 2008," may be cited "for its persuasive value[.]" Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

MHL-4

requirements (both state and local) that render the Zoning Ordinance exclusionary of outdoor billboards.

Whether a zoning ordinance is *de facto* exclusionary is determined in the present, at the time the landowner seeks to develop the use that the zoning ordinance purports to allow. *Habit OPCO,* slip. op. at 7. It is irrelevant that a zoning ordinance may have been valid at the time of enactment. Land use regulation is an ongoing exercise.[4]

Here, because outdoor billboards cannot be erected anywhere in the Township, the Zoning Ordinance is *de facto* exclusionary. I would reverse the trial court.

_____
MARY HANNAH LEAVITT, President Judge

---

[4] Quoting *Montgomery Crossing*, the majority states that there is no "ongoing obligation" on a municipality "to rezone." Majority slip op. at 23. The majority untethers this quotation from its factual context, *i.e.,* whether a municipality must revise its zoning districts because vacant land has become saturated with one permitted use and not the other. So long as a landowner can redevelop a property in accordance with the permitted land use regulation, the answer is "no."